## JOHN J. KERSEY v. SCH. RIVER E. S. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued April 2, 1889—Decided March 17, 1890.
[To be reported.]

1. The proper measure of compensation for the taking of land by eminent domain for railroad purposes, is the depreciation of the market value of the property caused by the location and construction of the railroad, ordinarily shown by the opinions of witnesses acquainted with the property and with the value of lands in the vicinity.

2. That, however, is not the only method of proof. The plaintiff may give in evidence, as a basis for the computation of this depreciation by the jury, the elements of disadvantage and of burden imposed upon the land, as the direct and necessary result of the location of the railroad upon it.

(a) A tenant, through whose leasehold property a railroad was constructed, held under a lease having eighteen months to run, at the time of the entry of the company, by the terms of which lease he was precluded from using the property otherwise than as a coal yard, and from assigning and sub-letting without the lessor's consent.

(b) The construction of the railroad caused the destruction of appliances belonging to the lessee and essential to the carrying on of his coal business, necessitating the construction by him of others in their place, and causing also an increase in the cost of handling his coal, and in the breakage and waste thereof:

3. Testimony was admissible, to show the amount of the lessee's necessary expenditure in reconstructing appliances to secure the facilities for continuing his business he had previously enjoyed, and the increased expense and loss in handling the coal therewith, not as specific items of claim, but as affecting the market value of the leasehold.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 170 January Term 1889, Sup. Ct.; court below, No. 472 September Term 1886, C. P. No. 2.

Statement of Facts.

On November 6, 1886, John J. Kersey petitioned the court below for the appointment of viewers to assess damages arising to the petitioner, by reason of the location and construction, by the Schuylkill River East Side Railroad Company, of a railroad upon and across certain land in the city of Philadelphia. Viewers were thereupon appointed, who reported assessing damages in favor of the plaintiff in the sum of $7,700, whereupon the company defendant entered an appeal from the award, and an issue was framed to determine what amount of damages, if any, the plaintiff was entitled to recover.

At the trial on October 10, 1888, the following facts were shown: In January, 1886, the plaintiff was in possession of a certain parcel of ground in Philadelphia, lying between the Schuylkill river and Twenty-fourth street, as a tenant under a lease for five years expiring on July 1, 1887, subject however to the proviso that in case the landlord should sell the property, the lessee should vacate the demised premises at the end of the current year, and subject to the condition that if the premises should be used by the lessee for any other purpose than as a coal yard and wharf, or if they should be underlet or the term assigned, without the written assent of the lessor, the lease should become forfeited. The plaintiff, upon the premises so leased, carried on the business of selling coal and sand. He received all his goods by boat, there being on the premises not only a wharf frontage upon the river, but also a dock. The plaintiff's coal, when received at the wharf, was hoisted out of the boats to the height of nine feet, put into barrows and carried along runs to the places of storage. All the hoisting apparatus, trestle-work, shedding, and appliances, used in his business, were the property of the plaintiff.

In January, 1886, the defendant company entered upon the premises to construct its road. It appropriated a strip of ground running through the same sixty feet in width. The construction of its road necessitated the destruction of the plaintiff's runs and sheds, and the construction of new appliances adapted to lifting the coal from the boats to a height of twenty-three feet and carrying it across the railroad track, the appliances required for carrying on the plaintiff's business, after the construction of the railroad being thus necessarily much more extensive in their dimensions than those formerly used

Statement of Facts.

James Colwell, the manager of the plaintiff's business, was called as a witness in his behalf. The witness having testified that the railroad company promised to construct for the plaintiff the runs and sheds necessary to enable him to carry on his business, but failed to do so, and that, in consequence he was compelled to construct them himself, the plaintiff made the following offers of further testimony:

Mr. Caven: I offer to show by this witness, as part of the damage to the leasehold interest of Mr. Kersey, the plaintiff, exactly what it cost him to reconstruct his runs and appliances, in order to give him the same facilities for continuing his business to the end of his term, after the entry of the railroad, as he had before; it having been shown that the runs had to be reconstructed after the entry of the railroad, in order to enable the plaintiff to conduct his business.

Objected to.

By the court: Objection overruled; exception.[1]

Q. How much did it cost you to construct those runs and equipments? A. $5,461 and some cents.

Q. Was there necessarily an increased cost in handling and storing your coal, after the construction of these new appliances, up to the end of your term? This is to show the decreased value of the leasehold.

Objected to.

By the court: Objection overruled; exception.[2]

A. Yes, sir; I am giving my testimony by the year. Q. Up to the end of your term there was an increased cost? A. Our increased cost was $805. Q. I have simply asked you if there was an increased cost in storing and handling your coal up to the end of your term. A. I have said yes. Q. What was that cost? A. $805 over the previous system. Q. About how much would that be per ton? A. Three and a half cents; say three cents. That would be inside of it. Q. Was there or not increased waste and breakage necessarily resulting from the new appliances in handling coal? This is asked in order to show the decreased value of the leasehold.

Objected to.

By the Court: Objection overruled; exception.[3]

A. There is an increased cost of $1,770 a year over the old way of doing business. Q. How much was that to the end of

your term ?    A. I don't know.    I didn't count it that way.
I counted it annually.    I suppose it would cost half of that
to the end.    Q. Just half of that to the end of your term ?
A. Yes, sir.    Q. Making about $2,500 ?    A. Yes, sir.

Other witnesses upon each side of the case testified respect-
ing the extent to which the construction of the railroad ne-
cessitated expenditures by the plaintiff in adapting his coal yard
to the continuance of his business, and its effect upon the ex-
penses and waste incident to handling his coal.

At the close of the testimony, the court, FELL, J., submitted
the case to the jury, instructing them to determine in the light
of the testimony and in accordance with principles laid down
in the charge, what depreciation in the value of the plaintiff's
unexpired term had been caused by the location and construc-
tion of the railroad through the demised premises.    The jury
rendered a verdict in favor of the plaintiff for $9,320.    A rule
for a new trial having been discharged, judgment was entered
on the verdict, when the defendant took this appeal, assigning
for error:

1–3. The admission of the plaintiff's offers. [1 to 3]

*Mr. Thad. L. Vanderslice* (with him *Mr. Lewis C. Cassidy*),
for the appellant:

1. The question for the jury was as to the effect of the rail-
road upon the market value of the plaintiff's leasehold estate,
his damages being measureable by the same rule that is ap-
plied to the owner of the fee: Penna. R. Co. v. Eby, 107 Pa.
166 ; Phila. etc. R. Co. v. Getz, 113 Pa. 214 ; and market value
is to be determined by the opinions of the witnesses: Pitts-
burgh etc. R. Co. v. Patterson, 107 Pa. 464.    The rule laid
down in Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411, that
the jury are to value the property as of the date of the injury,
without reference to the state of the owner's business, and as-
certain the difference between what it would have sold for as
unaffected and as affected by the obstruction, has never been
departed from.    The plaintiff did not show by any witness
the value of his estate, either before or after the entry of the
railroad company, but he was permitted to pursue just such a
method of proving damages as was attempted in Reading etc.
R. Co. v. Balthaser, 119 Pa. 482, and there held a ground of
reversal.

2. The plaintiff was entitled to be paid in full for damage done to his trestle and shedding, but the cost of new appliances sheds no light upon the depreciated value of the leasehold. It may well be that, under the changed conditions, its greatest value to the tenant would be for some other use than as a coal wharf. The testimony as to the increased cost of handling the coal, and the increased breakage and waste in it, with the new appliances, was not proper to determine the decreased value of the leasehold, and led the jury into speculation. These were matters unknown at the time when the injury occurred, and they involved collateral questions, such as whether the new appliances were properly constructed, whether the coal was of the same quality as that previously used, etc., and raised innumerable issues. Moreover, no defendant could under the law anticipate and be prepared to meet such testimony.

*Mr. Joseph L. Caven*, for the appellee :

1. The plaintiff was entitled to have the use of his premises to the end of his term, and the value of the appliances destroyed was therefore just what it cost him to construct new ones giving him the same facilities for doing business as before. The admission of testimony as to this cost is sustained by the authorities holding that the necessary expense of removing a business occasioned by the entry of a railroad is a proper element of damage : Phil. etc. R. Co. v. Getz, 113 Pa. 214; Penna. R. Co. v. Eby, 107 Pa. 166 ; Railroad Co. v. Hock, 118 Ill. 587 ; Railroad Co. v. Capps, 67 Ill. 607 ; and more directly by the decisions in Price v. Railroad Co., 27 Wis. 98 ; Chase v. Worcester, 108 Mass. 60 ; Lehigh Bridge Co. v. Coal & Nav. Co., 4 R. 9 ; Walter v. Post, 4 Abb. Pr. 382. As the only use to which the plaintiff can devote the premises is that of a coal yard, it must be so viewed in assessing damages : Railroad Co. v. Catholic Bishop, 119 Ill. 525.

2. Every loss, directly resulting to the plaintiff from the defendant's act, can be recovered as part of the damage to his leasehold estate : Penna. R. Co. v. Eby, 107 Pa. 166. Thus, it has been held that damages are recoverable for depreciation resulting from loss of rents on property sublet by the plaintiff : Pittsb. Junc. R. Co. v. McCutcheon, 18 W. N. 527 ; loss of

custom at a mill: Pittsb. etc. Ry. Co. v. Vance, 115 Pa. 325; or increased expense of cultivating a farm: Tucker v. Railroad Co., 118 Mass. 546. Therefore, all the testimony as to increased expenditure and cost, embraced within the three assignments of error, was properly admitted and submitted to the jury. Each leasehold estate so differs from every other that no general market value can be determined, and the only practicable and proper way of proving the depreciation in the value of this leasehold, was by showing the items of direct expense and cost entailed upon the plaintiff, and the effect of the railroad upon the operation of his business.

OPINION, MR. JUSTICE McCOLLUM:

No complaint is made by the defendant company of the instructions to the jury on the question of damages, and our inquiry is limited to alleged error in the admission of evidence.

The plaintiff was the lessee of a wharf property on the Schuylkill river, in Philadelphia, extending from the river to Twenty-fourth street. It was leased to him as a coal wharf and yard. Upon it he carried on the business of receiving, storing, and delivering coal for other parties, and of receiving, storing, and selling coal and sand on his own account. The appliances used in the business, and necessary to carry it on, belonged to him.

In January, 1886, the defendant company entered and located its road upon the demised premises, appropriating for that purpose a strip of land sixty feet in width, and dividing the property into two parts. The sheds, runs, and other appliances, indispensable to the business for which the property was leased, were partially destroyed by this action of the company, and the construction of new ones, adapted to the changed condition, became necessary in order to continue the business. A bridge, with a single span of sixty-eight feet, and an elevation of twenty-one feet above the railroad tracks, and a derrick, sheds, and runs of a corresponding height, were required. The company recognized the necessity for these appliances as the direct consequence of the location of its railroad, and admits that it promised the plaintiff to construct them, but excuses its non-performance on the ground that it could not agree with him as to the details of the work. In other words, the plaintiff want-

ed better structures than the company was willing to build, or considered necessary, in view of the probable duration of his leasehold. It was contemplated by the parties that the business should be continued by the plaintiff, and that he should have, as far as practicable, the same facilities for carrying it on that he had before enjoyed. It was the only business which his lease allowed him to establish there, and, if he abandoned it, his leasehold was worthless, because he could not sublet or sell it without the consent of his lessor. The company failing to provide the facilities it conceded he was entitled to, and had promised he should have, he constructed such appliances as were necessary for the continuance of the business, as it existed before the location of the railroad. The increased height of the structures increased the cost of raising the coal, and the breakage and waste in handling it. This additional expense and loss, together with the cost of the new appliances, he was allowed to prove on the trial of this issue. The company objected to this evidence, and now contends that the court erred in admitting it.

It is well settled that the proper measure of damages is the depreciation in the market value of the property, caused by the location and construction of the railroad. But the elements to be considered in the ascertainment of this depreciation are as varied as the properties affected, and the uses to which they are applied. A specification of all these elements is impossible, because they cannot be anticipated, and many of them remain to be developed in the course of the litigation consequent upon the taking of property by eminent domain. In the ordinary case of the appropriation of land for railroad purposes, the opinions of witnesses who are conversant with the property, and the general selling price of land in the vicinity, are received on the question of its value unaffected by the road, and its value as affected by it. But this is not exclusive of other, and in some cases better, methods of proof. It may be stated as a general principle, applicable to cases of this sort, that whatever injuriously affects the property, as the direct and necessary result of the location of the road upon it, may be considered in the assessment of damages.

In this case, the estate of the plaintiff was limited to a particular use. Its enjoyment, in accordance with the terms of

Syllabus.

its creation, required that the appliances which had been rendered useless by the entry of the defendant company should be reconstructed at an elevation which increased the cost of raising and storing the coal, and increased the breakage and waste in handling it. We think these matters were properly received in evidence as descriptive of the injury inflicted, and the burden imposed on the property by the occupation of it for railroad purposes, and that they were for the consideration of the jury, not as specific items of claim, but as affecting market value. The specifications of error are dismissed, and

The judgment is affirmed.