ALBERT METCALF & others *vs.* MAYOR AND CITY COUNCIL
OF BOSTON & another.

Suffolk.    January 16, 1893. — March 2, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*City — Way — Order laying out Way.*

A city is not bound, when a way is laid out, to make it safe and convenient for
   travellers through its entire width, if it is so wrought as to be reasonably fit for
   the public use for which it was designed.
The authorities of a city, in laying out a way, ordered "that the parcel of land before
   described be and the same hereby is taken and laid out as a public street or way
   of the said city with the name of M. Avenue, and the grade thereof is estab-
   lished, according to a plan of the said laying out and profile of the grade, made
   by" the city surveyor, of a certain date. *Held,* upon a petition by an abutter
   on the way for a writ of mandamus to the city, that the order laying out the
   way did not so prescribe the mode of constructing it that the city was bound to
   grade it to its full width.

PETITION, filed May 26, 1892, by Albert Metcalf, Gilbert
A. Tapley, and Joseph A. Jackson, for a writ of mandamus to
the mayor and city council of Boston and the superintendent
of streets of the city.    Hearing before *Allen,* J., who, at the re-
quest of the parties, reserved the case for the determination of
the full court.    The material facts appear in the opinion.

*E. W. Hutchins & H. Wheeler,* for the petitioners.

*A. J. Bailey,* for the respondents.

KNOWLTON, J.    The street commissioners and the city coun-
cil of the city of Boston laid out a street, two hundred feet wide
and about two miles long, in that part of the city which was
formerly Brighton.    The centre of the street, to the width of
sixty feet, has been wrought and fitted for public travel.    The
petitioners own a large tract of land abutting on the street,
which they wish to sell or use for building lots, and they ask
for a writ of mandamus to compel the city to grade the street,
and fit it for travel through its entire width.

The fundamental question is whether, when a street or high-
way is laid out, the authorities are bound to make it safe and
convenient for travellers through its whole width, if it is so
wrought as to be reasonably fit for the public use for which it

was designed.  We think it is well settled in this Commonwealth that they are not.  *Howard* v. *North Bridgewater*, 16 Pick. 189. *Smith* v. *Dedham*, 8 Cush. 522.  *Keith* v. *Easton*, 2 Allen, 552. *Weare* v *Fitchburg*, 110 Mass. 334.  The requirements of the Pub. Sts. c. 49, § 9, that the county commissioners, whenever a highway is laid out or altered, " shall in their return determine and specify the manner in which such new highway or altera- tion shall be made," implies that the way is not necessarily to be wrought through its entire width.  In many places a suffi- ciently good way can be constructed without occupying nearly the whole of the land taken.  Sometimes the existence of ledges or the necessity of carrying the road along steep hillsides, or of making deep cuts or high embankments, renders it almost im- possible to grade the road from side to side of the location.  It may be necessary, for the purposes of construction and repair, to include within the location much more land than is needed for the travelled path, and it is for the tribunal laying out the way to determine how much shall be taken for the location, and how wide the way shall be wrought for public use.

It is contended that the abutting landowners have a right to require the construction of the road up to the lines of their lots for convenience of access.  Undoubtedly they have a right of access to the road from their lots ; but roads are constructed for the use of the public, and there is no law requiring cities and towns to construct approaches from the houses or lots of adjacent landowners to the travelled part of the way, or to grade and con- struct the way up to the lines of the lots to enhance the value of the property.  If the construction of the road in a reasonable way for public use will be likely to make access to the road from a neighboring lot difficult, and to require a large expenditure on the part of the owner in the construction of a passageway, that will be taken into account in assessing the damages.

The petitioners in the present case own the fee of the street to the centre opposite their land, and they have a right to make for themselves driveways to the wrought part of the street in any reasonable way which does not interfere with the use of the street by the public.

The only remaining question is whether the order laying out the street prescribes the mode of constructing it in such a sense

that the city is bound to grade it to its full width. As we have already said, county commissioners, when they lay out a highway, are required by the statute to prescribe the mode of constructing it. Pub. Sts. c. 49, § 9. If the city or town fails to construct it in accordance with their order, it becomes their duty to construct it, and the cost can be collected from the city or town. Pub. Sts. c. 49, §§ 60, 61. If the county commissioners neglect to perform this duty, a writ of mandamus will be issued to compel them to do it. *Richards* v. *County Commissioners,* 120 Mass. 401.

By the charter of the city of Boston, the mayor and aldermen were given all the powers in regard to laying out streets that selectmen of towns had. St. 1821, c. 110, §§ 5–8, 11–15. St. 1854, c. 448. By the last mentioned statute they are also given all the powers of county commissioners. Selectmen of towns had power to lay out town ways and private ways, to be completely established by a confirmatory vote of the town. St. 1786, c. 67, § 1. Rev. Sts. c. 24, § 66. County commissioners can lay out highways. It would seem, therefore, that the mayor and aldermen of Boston, previously to the enactment of the law creating the board of street commissioners, could lay out town ways and report them for confirmatory action by the city council, and could also lay out highways in the performance of their duties as county commissioners. By the St. of 1870, c. 337, (Pub. Sts. c. 22, §§ 30, 31,) all the powers of the board of aldermen in regard to laying out streets are conferred on the street commissioners, with a provision requiring in certain cases a concurrent vote of both branches of the city council. This street was laid out under the authority of this statute, the mayor and aldermen and common council acting concurrently with the street commissioners. The street commissioners were not merely performing the functions of county commissioners, and it is at least doubtful whether the provisions of the Pub. Sts. c. 49, § 9, requiring county commissioners to specify the manner of construction of a way, and the time within which it shall be completed, were applicable to them.

The order is silent in regard to the time within which the work is to be completed, and also in regard to the manner of construction, except that the grade is given. Doubtless it would have been more in conformity with the usual mode of

procedure in such cases, if details had been given showing the condition in which the street was to be left on completion; but we are of opinion that fixing a grade of the street cannot be deemed equivalent to a statement that the street is to be wrought to its full width, or to any particular width, in fitting it for the use of the public.*   In the absence of such a statement, it was the duty of the authorities to construct it in such a way as the convenience of the public required.   It is not contended that the way is too narrow for the safety and convenience of the public travelling upon it, and there is no ground on which the court can properly interfere by a writ of mandamus.

*Petition dismissed.*

---

* The order was as follows : " Ordered, that the parcel of land before described be and the same hereby is taken and laid out as a public street or way of the said city with the name of Massachusetts Avenue, and the grade thereof is established, according to a plan of the said laying out and profile of the grade, made by T. W. Davis, City Surveyor, dated July 28, 1883, and deposited in his office."