KANSAS CITY *et al.* v. MORTON, *Appellant.*

## Division One, July 3, 1893.

1. **Kansas City Charter:** STREET GRADING: BENEFIT DISTRICT: ASSESSMENT OF DAMAGES. Under the charter of Kansas City (art. 9, secs. 8 and 13), relating to the assessment of damages, in favor of property owners, caused by grading streets and alleys, the authority of the court is limited to declaring in a direct proceeding that the benefit district is unreasonable; it has no authority to establish a new district.

2. ———: ———: ———: ———. The question whether any piece of property received benefits is one to be determined by the jury under proper instructions from the court, and the court commits error if it refuses to hear evidence on that issue.

3. ———: ———: ———: ———. The rule for the assessment of damages and benefits in favor of property owners, under the Kansas City charter, for grading streets and alleys in said city, discussed and stated.

4. **Constitution:** GRADING PUBLIC STREET: DAMAGES. Prior to the adoption of the constitution of 1875, a city was not liable to the owner of property abutting on a public street for general damages caused by grading or regrading the same, nor for special damages, if such work was done in a careful manner and under corporate authority.

5. **City**: STREET GRADING: DAMAGES. Where buildings on the line of the grading of a street or alley in a city are threatened with injury thereby greatly in excess of the expense of protecting them, the owner is bound to use reasonable exertion and necessary expense in protecting them and the damage should be measured by such expense and exertion.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

REVERSED AND REMANDED.

*Brumback & Brumback* for appellant.

(1) The court should not have allowed the questions, asked by the city, of witness Hyer to be asked or answered. He was not shown in any way to be qualified to express his opinion. Lewis on Eminent Domain, sec. 437; *Railroad v. Vance*, 115 Pa. St. 325. (2) The same rule should be applied in assessing benefits on both the lands that are damaged and those that are not; and the court, therefore, erred in giving instruction number 3 of its own motion, in connection with instructions numbered 1 and 2 asked by city, and erred in refusing instruction number 5 asked by Annie Morton. Lewis on Eminent Domain, sec. 471, page 606, bottom, and all 607; *Daugherty v. Brown*, 91 Mo. 26; *McReynolds v. Railroad*, 34 Mo. App. 581; Cooley on Constitutional Limitations, star pages 569, 570 [5 Ed.], pages 703–705; Charter Kansas City, 1889, art. 8, sec. 7; *State v. City of Kansas*, 89 Mo. 34. (3) In this case Annie Morton should have recovered as her damages the reasonable cost of supporting her house and improvements, and making same conform to proposed grade, and the court erred in giving instructions 3 and 4 asked by city, and in refusing instruction number 3 asked by Annie Morton. 1 Sutherland on Damages, p. 148; Sedgwick on Dam-

ages [8 Ed.], sec. 220, 221, 932–939–947; *Hartshorn v. Worcester*, 113 Mass. 111; *Flynt v. Railroad*, 38 Mo. App. 94; *Hartshorn v. Chaddock*, 31 Northwestern Reporter (N. Y.), 997; *Bridge Co. v. Schaubacher*, 57 Mo. 582; *Fisher v. Goebel*, 40 Mo. 475; *Wisdom v. Newberry*, 30 Mo. App. 241; *McCarthy v. St. Paul*, 22 Minn. 527; *Gregg v. Mayor*, 56 Md. 256. (4) The court could only be justified in giving instruction number 2 of its own motion by the fact that it must have conclusively appeared from the evidence that the benefit district was unreasonable, and in that event the charter provides that the court shall at once declare the proceedings void. It was, therefore, error to refuse instruction number 6 asked by Annie Morton (p. 20 abstract), and to overrule her motion. Charter of Kansas City, 1889, art. 8, sec. 13; *City of Kansas v. Baird*, 98 Mo. 215. (5) The benefits to be assessed against property are only such special or peculiar benefits as enure directly to it. Those it shares in common with all other property in the city are not assessable against it. *Rude v. St. Louis*, 93 Mo. 409; *Fairchild v. St. Louis*, 97 Mo. 85; *Canman v. St. Louis*, 93 Mo. 92.

*Ashley & Gilbert, F. F. Rozzelle, F. H. Dexter* and *F. W. Randolph* for respondents.

(1) It is not necessary that a witness should be an expert on values of real estate to render him competent to tell what he thinks of the effect of an improvement; but if he has any superior knowledge of the subject, though an ordinary and not an expert witness, he can express his opinion from general observation in such cases. Rice on Evidence, sec. 135 f; Lewis on Eminent Domain, sec. 437. (2) As damages are, by the terms of the charter, to be first considered and allowed before the benefits to the city and to private property are

assessed, this court has no right to assume that the damages were lowered to equal the assessment of benefits, as appellant insinuates.   (3) While ordinarily the question of determining what property shall be assessed with benefits may be in the exclusive province of the jury, yet there are cases where the facts are so clear and undisputed, and where the physical facts make the question so clear and indisputable, that it then becomes the duty of the court to declare the law that no benefits can be assessed against private property where the same can derive no possible benefit from a proposed improvement.   Burroughs on Taxation, pp. 446–661; *City of New Orleans*, 20 La. Ann. 497; *Rude v. St. Louis*, 93 Mo. 409.   (4) Where no part of a tract of private property touches a proposed public improvement and is so separated therefrom by intervening private property that no direct or immediate benefit thereto can result from such improvement, it cannot be assessed with benefits to pay for such improvement, notwithstanding a legislative declaration purporting to authorize the same to be done.   *Thomas v. Gain*, 35 Mich. 155; *Paulson v. Portland*, 16 Oregon, 450; *In Matter of Fourth Avenue*, 3 Wend. 452; *State ex rel. v. City Council*, 12 Rich. (S. C.) 702; *Taylor v. Palmer*, 31 Cal. 241; *State et al. v. City*, 37 N. J. Law. 330; *In Matter of Drainage of Land*, 35 N. J. Law. 497; *Hanscom v. City*, 11 Neb. 37.   (5) Under the decisions above cited, and the evidence, the court would have been obliged to set aside a verdict assessing lots not bordering on the proposed alley with benefits.   Since reasonable minds could not honestly differ upon this question under the evidence, it was the prerogative and duty of the court to take the question from the jury. *Field v. Railroad*, 80 Mo. 206; *Herrman v. Railroad*, 27 Mo. App. 445; *Walker v. City of Kansas*, 99 Mo. 647;

*Carroll v. Railroad*, 88 Mo. 248; *State v. Moore*, 101 Mo. 329; *Rice v. McFarland*, 41 Mo. App. 489; *Bank v. Hatch*, 98 Mo. 376.

MACFARLANE, J.—This is a proceeding under the charter of Kansas City, for the assessment of damages and benefits to private property for the proposed grading of an alley lying between Wyandotte and Central streets and extending through the block from Ninth street to Tenth street, the length being two hundred and forty-seven feet.

The passage of an appropriate ordinance was effected and all preliminary steps were taken for the assessment of damages. Annie Morton owned lot number 6 in said block, which was twenty-four feet wide, lying on the west side of the alley, fronting south on Tenth street and extending along the alley one hundred and forty feet to an alley running east and west through the block. The heirs of James Morgan owned lot 7 lying along the east side of the alley fronting south and also running back to the east and west alley. These heirs also owned lot 8 lying east of said lot 7 its entire length. These owners duly filed their claims for damages, as did also some of the other owners abutting on the alley. Some made no claim for damages. Upon these claims for damages and for the assessment of benefits, the cause was tried by a jury.

The benefit district, as declared by the ordinance, included some lots which did not abut on the alley. The court excluded all evidence of benefits to these lots, holding thas they could not be assessed, thereby cutting out from assessment a portion of the property within the established district. The claimants for damages insisted that this ruling rendered the whole proceedings void.

Annie Morton, who is the only appellant, offered evidence showing "that at the southwest corner of the alley, upon her lot, there stood a two-story brick residence costing about $9,000; that the east wall of the house, which is seventy feet long, built of brick and with a stone foundation, stood exactly on a line with the alley; that her lot was twenty-four feet wide and the house covered almost the entire width of the lot; that the alley had already been graded out some few feet, and that in the front and rear of her house were stone retaining walls running along the line of the alley; that on the rear of the lot and very close to the line of the alley were situated cisterns and vaults; that the walls of the house and the retaining walls now are built down below the present surface of the ground four or five feet, and that the cut proposed to be made made in the alley was six feet at the front of the house and fourteen feet at the rear.

She then offered evidence showing the expense that would be necessary in securing and protecting her property and the improvements thereon. This evidence tended to prove that such expense would be from $2,300 to $4,000.

There was other evidence offered and admitted tending to show that the property of the various other claimants was damaged, and that various lots abutting upon the alley in question in the benefit district were benefited by the proposed improvement in various sums, and other evidence tending to show that the lots not abutting on the alley would not be benefited in any way nor in any sum by the proposed improvement, and there was no evidence that tended in any way to show that these lots not abutting upon the alley in question would be in the least benefited by the proposed improvement."

Upon the evidence and instructions of the court, the jury assessed the damages of Annie Morton at $1,100, and from the judgment thereon she appealed.

I. The charter of the city (sec. 2, art. 8) requires that the ordinance that shall order grading or regrading of any street or alley, shall also prescribe and determine the limits within which private property is benefited by the proposed grading and regrading. Section 13 of the same article in providing for the proceedings for ascertaining the damages before the court or judge makes this provision in regard to the benefit district: "Provided, however, that should the court or judge, upon evidence, find that the benefit district prescribed by the common council is unreasonable, it or he can so declare and cause an entry of such finding to be placed on record in the cause; and such finding shall cause all the proceedings had under such ordinance to be null and void; and an appeal from such finding of the court or judge may be taken in the same manner as in any ordinary civil case. The inquiry as to the reasonableness or unreasonableness of the ordinance in the matter mentioned may be heard and determined by the court or judge before the submission of any other testimony in the case, or it may be submitted and disposed of by the court at any time before the verdict or report of the commissioners."

At the conclusion of the evidence the court gave the following instruction:

"The court instructs the jury that they must not assess with benefits any property in block 7 upon the map read in evidence east of lot 8, nor west of lot 6; nor must the jury assess with any benefits the west forty feet of lots 20, 21 and 22 in block 3, upon such map; nor must the jury assess benefits against any lot abutting upon the alley in question that will be

damaged in its market value by the proposed grading, whether damages thereto be claimed herein or not."

This instruction excludes from assessment property lying inside the district established by the ordinance.

The legislature, in which the taxing power is vested, has delegated to the common council of the City of Kansas exclusive power to prescribe and establish the districts in which the property may be benefited by grading streets and alleys, and the courts have no power to enlarge or contract them No such power is given by the charter, and none exists independent of it. The discretion is entrusted the council alone. *Keith v. Bingham,* 100 Mo. 300; *Kansas City Grading Co. v. Holden,* 107 Mo. 308; *Johnson v. Duer,* 115 Mo. 366.

The only supervising control over the action of the council, given to the courts, under the foregoing proviso, is to declare the district unreasonable, and to nullify the whole proceedings. This power the court doubtless had under its general jurisdiction, and in a direct proceeding for that purpose. This charter provision grants the power and jurisdiction, in connection with the proceedings, for the assessment of damages, but the jurisdiction is limited to declaring the district unreasonable, and it has no power to establish another, either directly or indirectly.

It does not follow that every piece of property within a district, as established by ordinance, is conclusively bound for even nominal benefits. The charter provides that "no piece of private property shall be assessed with benefits in any amount in excess of the actual benefits which the same will receive by reason of the proposed improvement." The question whether any piece of such property receives benefits is one to be determined by the jury under proper instructions from the court. The duty of the court in instructing

the jury, under the proceedings, is the same as in other jury trials, and, if it appears conclusively from the evidence that any property is not benefited, the jury should be instructed to assess no benefits against it. The district will not necessarily be unreasonable simply for the reason that certain property may not be benefited by the improvement. Its unreasonableness is a matter for the direct and special finding and determination of the court.

We think the court committed error in refusing to hear evidence as to whether or not any particular piece of property was benefited. The court had no right to assume, without evidence, that any property in the district was not specially benefited. The presumption, on the contrary, was in favor of the action of the council in prescribing the district. If the evidence had been admitted, and had shown conclusively and without conflict that the property excluded by the court from assessment was not, in fact, benefited, there would have been no substantial objection to the instruction.

II. The rule for the assessment of damages and benefits must be governed by the constitution of the state and the provisions of the charter of the city. The former declares that "private property shall not be taken or damaged for public use without just compensation." Sec. 21, art. 2, Const. of Mo. 1875. The rule provided by the charter for ascertaining the damage and benefits provides that: "*First.* The amount of actual damage to each piece of private property that will be damaged by reason of the proposed grading or regrading, making just allowance *for all benefits* to such piece of property from such grading or regrading, and when the damages to any piece of property do not exceed the benefits thereto from the proposed improvement, the commissioners shall not report any allowance

or damages to such piece. *Second.* If the commissioners shall find that private property is actually damaged by reason of the proposed improvement, to pay the total amount of such damages allowed, they shall first *assess against the city* such sum as is equal to the amount of *benefits the city at large will receive* from the proposed improvement, and the balance of the sum so awarded as damages, and not assessed against the city, the commissioners shall assess against the private property within the benefit limits prescribed in the ordinance, but excluding from such assessment any piece of private property to which damages are awarded on account of · the proposed improvement, when the damages allowed exceed the benefits assessed against such piece of private property; and no piece of private property shall be assessed with benefits in any amount in excess of the actual benefits which the same will receive by reason of the proposed improvement; and in determining such actual benefits to any piece of private property, the damages which it may have sustained, but for which no claim was made, shall be taken into consideration by the commissioners." Sec. 7, art. 8, Charter Kansas City.

Until the adoption of the constitution of 1875, the city was not liable to the owner of property abutting upon a public street for general damages caused by grading or regrading the same, nor for special damages, if the work was done in a careful manner and under corporate authority. *St. Louis v. Gurno,* 12 Mo. 418; *Hoffman v. St. Louis,* 15 Mo. 651; *Rude v. St. Louis,* 93 Mo. 415.

The foregoing charter provisions, as the same may be limited by the constitution, provided the rule for the assessment of damages and benefits in this matter. It will be observed that the charter requires that in case a piece of property is damaged by the grading, just

allowance shall be made for all benefits accruing thereto, and if the damages do not exceed the benefits no damage shall be allowed.

In order to pay the damages, if any, the commissioners are required to assess against the city all benefits that the city at large will receive, and the balance they shall assess as benefits, against the property in the district not damaged. None but actual benefits shall be assessed against property benefited; that is, unless the benefits exceed the damages, no benefits shall be assessed. The question is whether the benefits to be assessed are to be confined to such as are special to the property to be charged, or whether it includes also such as are general to property outside the district.

The construction the court gave to these provisions of the charter is clearly indicated by the following instruction given:

"In determining whether any particular piece of property is benefited by the proposed grading or not, and if benefited, how much, the jury should disregard all benefits accruing to said property which accrue to other lots and parcels of land in Kansas City outside of the benefit district; but this instruction only applies to the lots, if any, that are assessed with benefits for the proposed grading, in the estimate of such benefits, and does not refer in any way to the lots, if any, that the jury deem damaged in their market value by reason of the proposed grading."

It will be seen that the court adopts one rule for estimating benefits in case the property is damaged, and another in case it is benefited—charging the former, but not the latter, with general benefits. This does not seem to us to be the true construction of the charter. That "all benefits" the city at large will receive from the proposed improvements are to be assessed against the city is very clearly expressed. These are paid

by the city from revenues raised by general taxation to which the damaged property contributes its proportion.

The general purpose of the legislature as declared under this charter is, manifestly, to place the property owner who suffers loss by the improvement, upon the same footing as one who receives only benefits. If the property of the community generally, outside the district, is enhanced in value by reason of the work or improvement, and the owners thereby receive advantanges in common with those whose property is damaged, common justice requires that they should contribute their just proportion of the cost of securing such advantages. This cost the charter justly requires to be borne by the city at large.

"Just compensation, thus estimated, is a sum of money which makes the owner whole, and, in respect to general benefits or damages resulting from the work or improvement, leaves him in as good a situation as his neighbor" whose property is not damaged. Lewis on Eminent Domain, sec. 471.

The requirement of the charter that, in case a piece of property shall be damaged, allowance for all benefits shall be made, can only mean all such benefits as are not required to be charged against the city at large. Any other construction would not only be repugnant to the expressed intent of the charter, but would impose a burden upon one citizen which his neighbor receiving equal benefits would not be called upon to bear. Such construction would also require the payment for such general benefits by the land owner and also by the city at large, which could not have been intended. It would require the owner of the damaged property to assume and pay the obligation imposed upon the city by the charter, and it would unjustly discriminate in favor of the one whose

property was benefited, and against one whose property was damaged.

This construction is also, we think, repugnant to the spirit of the constitution requiring the payment of just compensation for property "taken or damaged," in such cases. The rule for the measure of damages to the remaining land where a part only of a tract is taken for public uses, as construed by many decisions of this court, in condemnation proceedings, allows the reduction of the damages by the amount of the benefits accruing to the land, from such use, which are special to the property damaged, and excludes all such as are general and common to other property not directly affected. *Daugherty v. Brown*, 91 Mo. 31; *McReynolds v. Railroad*, 110 Mo. 484, and cases cited by each.

It is insisted that a distinction should be observed between a case in which a part of a tract is taken, and one in which the tract is damaged only; that in the latter case the damage would only be the diminution in the actual pecuniary or market value of the land affected, to obtain which all benefits, whether of a general or special nature, would necessarily enter into the calculation. While the rule has been thus declared in some of the states under constitutional and charter provisions similar to ours, we do not think it consistent with our decisions. Our constitution secures to the property owner the right to compensation when his property is damaged in the same terms as when it is actually invaded and taken. No reason is seen why the rule for assessing the benefits should be different.

The proper construction of the charter requires that only special benefits be charged whether the property is damaged or benefited.

III. Appellant requested, and the court refused to give, the following instruction: "The defendants, Morton and Morton's heirs, are entitled to have

charged in favor of their property such damages, if any there be, as may result to their property from changing the present surface of the ground, and in estimating such damages the jury may take into consideration the present situation of the buildings and walls on their land, their situation after the proposed cut, the cost of altering and supporting same to make them conform to proposed cut, and the value of their property after the cut is made, including such benefits as may result to their property from making the proposed cut."

"It is the duty of one sustaining damages by reason of the act of another, to use all reasonable exertion to protect himself and avert, as far as practicable, the injurious consequences of such act." *Railroad v. McGrew*, 104 Mo. 282, and cases cited; *Hartshorn v. County of Worcester*, 113 Mass. 111. Under this rule, it would be the plain duty of the property owner to use all reasonable care to avoid or lessen the damage to his property. This would be the case though proper protection of the property required the expediture of money. The principle is thus expressed by the court of appeals of New York in a recent case: "There are many cases of injury to real estate where the cost of repairing the injury may be the proper measure of damages. The owner is not, in every case of injury to the soil, the trees or the fixtures, driven to proof of the diminution of value of the estate by reason of the injury, in order to establish his damages. The rule seems to be that when the reasonable cost of repairing the injury or in this case the cost of restoring the land to its former condition, is less than what is shown to be the diminution in the market value of the whole property by reason of the injury, such cost of restoration is the proper measure of damages. On the other hand, when the cost of restoring is more

than such diminution, the latter is generally the true measure of damages, the rule of avoidable consequences requiring that in such a case the plaintiff shall diminish the loss as far as possible.''

It is evident that the buildings and improvements on appellant's lots were threatened with injury greatly in excess of the cost of protecting them. The owner was bound to use reasonable exertion and incur necessary expense in protecting them, and the damage under such circumstances should be measured by such expense and exertion, and the instruction should have been given under the evidence in this case. If it had appeared that the expense of protecting the buildings would exceed the damage that would result to them from grading the alley, the instruction would have been improper. The land owner would have no right to increase his damage and at the same time improve his property and increase its value. If the evidence was conflicting then the jury should decide whether the expense of protecting the property would or would not exceed the damage to it without securing it.

For the errors pointed out, the judgment is reversed and cause remanded. All concur, except BARCLAY, J., not sitting.