ATTORNEY GENERAL *vs.* MAYOR OF BOSTON & another.

HENRY W. HUNT *vs.* SAME.

Suffolk.    March 3, 1904. — June 23, 1904.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Way,* Laying out of highway.

The order of the county commissioners of Norfolk County made in 1844, laying out what was formerly the causeway over Mill Creek in Dorchester as a highway, required only that the road as then existing should be put in proper repair, and does not require that a certain jog about one hundred and nineteen feet long which originally was left unfilled should be included in the highway so as to make it of a uniform width of forty feet, the fact that this was the contemporaneous construction of the order by all who had occasion to work under it and that it remained unquestioned for sixty years being considered of much weight in arriving at this conclusion.

The owner of land abutting on a highway has no right to require the construction of the highway to the line of his land for convenience of access.

TWO PETITIONS, filed December 17, 1903, one by the Attorney General at the relation of Henry W. Hunt, and the other by Henry W. Hunt, personally, for writs of mandamus addressed to the mayor of Boston and the superintendent of streets of that city commanding them to construct a certain portion of Freeport Street in that part of Boston called Dorchester to the full width of forty feet, the city of Boston having been made a respondent by an amendment filed and allowed on December 29, 1903.

The cases came on to be heard together before *Loring,* J. upon the petitions, exhibits and answers, and at the request of the parties the justice reserved them for determination by the

full court, such decree to be entered therein as justice might require.

*H. W. Putnam,* for the petitioners.

*T. M. Babson,* for the respondents.

HAMMOND, J.   These are petitions, one by the attorney general of the Commonwealth at the relation of a private citizen, and the other by an abutting landowner, for a writ of mandamus to compel the respondents to construct a certain "portion of said Freeport Street to the full width of forty feet, either with a stone retaining wall or wooden bulkhead with solid filling, or with piles and planking or other suitable open construction, and to make and maintain the same open, safe, and convenient for public travel to said entire width, with strong and sufficient railing for the security of travellers on the easterly or outward side of the same."

It appears that by St. 1807, c. 13, and St. 1808, c. 17, a corporation finally called the Dorchester Mill Corporation was authorized to build certain roads, including a milldam or causeway over Mill Creek so called, in what was then the town of Dorchester, since become a part of Boston ; the causeway to be forty feet in width and to contain a bridge or draw through which at proper times vessels might pass; and that as early as 1810 the causeway and bridge were built, the greater part being over flats which at high tide were covered with water several feet in depth.   The causeway was built with solid filling, the retaining wall being of stone.   It was forty feet wide except that on the easterly side there was a jog or recess in the wall about one hundred and nineteen feet long and five feet wide at the northerly end and seven feet wide at the southerly end, so that there was an area of about six hundred and eighty-eight square feet of the original location which was not filled; and the causeway was only thirty-three to thirty-five feet wide where it abutted this jog.   The top of the causeway at this jog was from nine to eleven feet above the surface of the abutting flats.   As thus constructed it was opened for public travel, and has been used continuously ever since as a public highway.   It was provided (St. 1808, c. 17, § 5) that upon the completion of the dam the corporation should " receive three hundred dollars, as voted by the town of Dorchester, . . . and the town of Dor-

chester shall be at no further expense on account of said roads, until they are accepted by the town." It does not appear that the town ever accepted the causeway as a public road.

By St. 1833, c. 104, the Tenean Free Bridge Company was incorporated, and was authorized to build a new bridge over the creek, and was charged with the duty of keeping it safe and convenient for passengers, free of toll. The corporation in due time built the new bridge in the place of the earlier one, and repaired and fenced the causeway to the width of forty feet throughout its entire length, with the exception of the jog above mentioned which remained as before.

In 1844, the county commissioners of Norfolk County passed an order laying out a highway over this causeway which for a generation had been used for public travel; and these petitions are brought to compel the completion of the work required, as the petitioners allege, by this order. It is to be noted that the order was passed sixty years ago and that the work was done soon after, but it does not appear that it ever has occurred to any person until quite recently that the work required by it was not completed in accordance with its terms. Under these circumstances we ought to look carefully at the record to see whether the interpretation for which the petitioners contend is the necessary one. They contend that the order required the road to be constructed and fitted for public travel to the full width of forty feet throughout its entire length; but we are of opinion that by a careful reading of the order it appears that such is not the necessary or even fair construction of it. It is plain from the recitals in the record that this causeway and bridge, which had been used for many years for public travel but had been maintained only by private corporations, had become dangerous to travellers, and the purpose of this order was not to change (except in one place at the north of the bridge) the outlines of the causeway as laid out or the part worked for public travel as originally constructed, but to have the road repaired and maintained as a highway by the public authorities. It is true that the record states that "the whole road, bridge and draw [is] to be repaired within two months so as to be convenient and perfectly safe for all loads, teams and travellers," but in view of the circumstances this cannot be construed as requir-

ing the change in the jog, but simply as an order that the road as then existing should be put in proper repair.  Such was evidently the contemporaneous construction of the order by all who had occasion to consider it, and at this late day that is a consideration of much weight.  So far, therefore, as these petitions are based upon the theory that the work required by the order has not been done, they have no standing.

The petitioner Hunt contends in addition that the road should be so constructed as to give him access to it from his abutting land.  The right of abutting landowners in this respect is stated by Knowlton, J. in *Metcalf* v. *Boston*, 158 Mass. 284, 285, in the following language : " It is contended that the abutting landowners have a right to require the construction of the road up to the lines of their lots for convenience of access.  Undoubtedly they have a right of access to the road from their lots ; but roads are constructed for the use of the public, and there is no law requiring cities and towns to construct approaches from the houses or lots of adjacent landowners to the travelled part of the way, or to grade and construct the way up to the lines of the lots to enhance the value of the property.  If the construction of the road in a reasonable way for public use will be likely to make access to the road from a neighboring lot difficult, and to require a large expenditure on the part of the owner in the construction of a passageway, that will be taken into account in assessing the damages."  This principle is applicable to the case presented in the petition of Hunt.

The conclusion to which we have come on these points renders it unnecessary to examine the other grounds of defence, some of which seem to present grave difficulties to the maintenance of the petitions.

*Petitions dismissed.*