285 P.2d 609

PIMA COUNTY, State of Arizona, and the Board of Supervisors of Pima County, Arizona, and Charles Lamb, Lambert Kautenberger and Thomas S. Jay, Appellants,

v.

Evo DE CONCINI and Ora De Concini, his wife, Appellees.

No. 6027.

Supreme Court of Arizona.

July 5, 1955.

James Elliott Dunseath, Tucson, for appellees.

WINDES, Justice.

The appellees, plaintiffs below, are owners of a tract of land lying along the south border of a highway laid out by the appellant, Pima County, Arizona. On October 15, 1951, the board of supervisors ordered that the highway be widened in such a manner that it necessitated taking a 35-foot strip of plaintiffs' land for a distance of approximately 2640 feet constituting about two acres. Plaintiffs appeared at the meeting of the board of supervisors at the time the foregoing order was issued and advised the board that the value of the land to be taken was $2,500 but that if the highway should be so constructed as to not destroy the avenues of ingress and egress to the remaining land, they would claim no compensation for the land taken nor for damages to the remainder. Defendants refused to give assurance that the rights of ingress and egress would not be disturbed and adopted a final resolution allowing neither compensation nor damages. Plaintiffs posted bond and appealed to the superior court under the provisions of section 59–601, A.C.A. 1939. The notice of appeal filed with the superior court alleged the value of the property taken to be $2,500 and that the amount of damage to the remaining property had not been determined and prayed that the board of supervisors fix the amount of cost bond and certify all judgments, orders, res-

Gordon G. Aldrich, Deputy County Atty., for appellants.

olutions together with original papers, plans and evidence as by statute provided.

At the beginning of the trial, plaintiffs asked and secured leave of court to amend the notice by increasing the alleged value of the land taken by $84.40 and adding to the prayer a request that the court render judgment in the sum of $2,584.40 as compensation for the land taken and for such severance damage as the evidence shows to be reasonable and proper with interest and costs. The matter was tried with evidence being submitted concerning the value of the land taken and severance damages. Plaintiffs sought and were allowed to amend the prayer to conform to the proof by asking severance damages in the sum of $45,800. Defendant objected to these amendments but did not ask for continuance at the time of the respective amendments.

The court rendered judgment awarding compensation for the land taken in the sum of $2,584.40 and severance damages in the sum of $41,906.50 with six percent interest from October 15, 1951. Defendants appeal submitting the following two assignments of error:

"1. (a) The court erred in taking evidence of a so-called 'burden' to the lands of the appellees, in addition to the evidence of severance damage. Separate appraisals of elements comprising severance damage are inadmissible except to aid the court in arriving at a value.

"(b) The court erred in denying the defendants-appellants' motion to strike the testimony concerned with the 'burden' on the land. Separate appraisals added together give a cost figure rather than a value figure. The latter is the true inquiry required in condemnation actions.

"2. It was error to deny the appellants a continuance because the lack in the appellees' pleading, and the appellees' trial amendments resulted in surprise and prejudice to the appellants."

There was ample evidence to prove that in the process of widening the highway the defendants constructed in front of plaintiffs' remaining property a drainage ditch approximately 48 feet wide and three to four feet deep which completely destroyed ingress and egress on the north side of the property. Plaintiffs submitted three witnesses qualified as valuation experts who had conferred prior to the trial and who testified substantially as follows:

Prior to the taking, the entire tract had a value of $80,500. They gave a breakdown of this total in the following manner: the northwest corner consisting of approximately one acre adapted for service station, $25,000; approximately nine acres adapted for a shopping center, $18,000; the northeast corner adapted for small stores constituting five acres, $7,500; and the balance of approximately fifty acres for residential use at $600 per acre, or $30,000. They calculated the value of the part taken on a square footage basis at $2,584.40 leaving a value to the remaining land before taking:

without considering severance damage of $77,915.60. They further testified that with the drainage ditch access to the highway was destroyed and because of this the remaining land was not adapted to any commercial use and had little value, if any.

■ An engineer testified to the feasibility of constructing a series of access bridges and indicated that the cost would be $21,356.50. All the valuation witnesses for the plaintiffs testified that, assuming this expenditure, the remaining land had a value of $36,009.10. They further testified that, if the bridges were constructed, there still would be an aggregate depreciation in value of the land in the sum of $20,550. Thus, according to their testimony, the land had a valuation of $57,356.60 after the expenditure of $21,356.50 for bridges. Witness Klafter testified that he arrived at the remaining value of $36,009.10 by deducting from the original value of $77,915.60 the estimated cost of bridges and the aggregate depreciation of the land in the sum of $20,-550. It thus appears that the effect of considering and giving force to the cost of partial restoration of access is to allow plaintiffs damages for such cost ($21,356.50) plus depreciation in the sale value of their land after partial restoration ($20,550). When only a part of the property is taken, the measure of severance damages is the difference between the market value of the property not taken before and after the taking. If the damaged property can be advantageously reconstructed or rearranged, then the cost of such reconstruction or rearrangement is a matter that should be considered by the court or jury in fixing the market value subsequent to the taking. Currie v. Glasscock County, Tex.Civ.App., 212 S.W. 533; Milam County v. Akers, Tex.Civ.App., 181 S.W.2d 719 (error refused); Metcalf v. City of Boston, 158 Mass. 284, 33 N.E. 586; Schuylkill River E. S. R. Co. v. Kersey, 133 Pa. 234, 19 A. 553, 554, 7 L.R.A. 409.

The rule is well phrased in the case of Schuylkill River E. S. R. Co. v. Kersey, supra:

"We think these matters were properly received in evidence as *decriptive* of the injury inflicted, and the burden imposed on the property by the occupation of it for railroad purposes, and that they were for the consideration of the jury, not as specific items of claim, but as affecting market value."

■ The rule also is that in arriving at the market value of land which has been damaged by the exercise of the right of eminent domain the court has a right to admit evidence of possible expenditures which, if expended, would diminish the damages. While the measure of severance damages is the difference between the market value before and after the taking, evidence of expenditures which, if made, would cause a change in market value are admissible and should be considered by the court in arriving at such value. The limitation of the rule is that the expenditures must be in such an amount as will not exceed the difference between the market val-

ue before and after taking which would have existed without the expenditure. In other words, this class of evidence cannot operate to increase the damages above what they would be without the expenditure. In re Wyandotte and Central Sts., 117 Mo. 446, 23 S.W. 127; State ex rel. State Highway Commission v. Southern Securities Co., Mo.App., 60 S.W.2d 632.

■ A person whose property has been damaged is entitled to be restored as near as possible to his former position. According to the evidence plaintiffs had a property worth $77,915.60. Access was destroyed. A purchaser willing to pay the valuation testified to by the witnesses would discover that if he spent $21,356.60 for bridges he would then have a property worth $57,365.-60. He would deduct the cost of the bridges and pay the plaintiff the difference, or $36,-009.10. With this amount and the judgment for $41,906.50, the plaintiff would have the value before taking, ($77,915.60). We are therefore unable to say the judgment is incorrect.

■ At the close of plaintiffs' evidence, defendants moved for a continuance apparently upon the ground that they were surprised concerning the nature and quantity of plaintiffs' evidence in regard to severance damages and that they were at a loss to present counter evidence. Defendants assign as error the denial of this motion. The granting or denying of such a motion involves the discretion of the trial court.

The defendants should have anticipated the introduction of any competent evidence bearing upon the question of severance damages and be prepared to meet the same. Certainly, there is nothing to indicate the court abused its discretion in denying the motion.

The judgment is affirmed.

LA PRADE, C. J., and UDALL, PHELPS, and STRUCKMEYER, JJ., concur.