682 P.2d 1148

**PIMA COUNTY, a body politic and corporate, Plaintiff/Appellant,**

**and**

**Estes Homes, Plaintiff-Intervenor/Appellant,**

**v.**

**PALOS COMPANIES UNLIMITED, a California corporation; Joan Choi, et vir.; and Kwan Kih Minn and Young Soo Minn, husband and wife, Defendants/Appellees.**

**No. 2 CA–CIV 4987.**

Court of Appeals of Arizona, Division 2.

April 10, 1984.

Review Denied June 26, 1984.

Stephen D. Neely, Pima County Atty. by John R. Neubauer, Tucson, for plaintiff/appellant Pima County.

Miller & Pitt, P.C. by Gerald Maltz and Linda A. Drake, Tucson, for plaintiff-intervenor/appellant Estes Homes.

J. Emery Barker, Tucson, for defendants/appellees.

## OPINION

HOWARD, Judge.

This is an eminent domain case involving the construction of a drainage ditch. The determinative issue is whether appellees proved severance damages. We hold that they did not.

The subject property is flat, undeveloped desert land consisting of 78 acres (parcel 6G) and a private road (parcel 8A) which led south from the property to the Irvington Road alignment. The property was zoned for a trailer park but its location in the 100-year flood plain inhibited its full development since it was subject to flooding at depths of up to two feet during heavy rains.

The Irvington Road alignment was nothing more than that, an alignment, in other words, the location of Irvington Road if it were extended in a westerly direction. Although the alignment was dedicated, the right-of-way was not open to public travel. Furthermore, the county had no intention of opening the road for public use. In fact, one of the members of the board of directors of the landowner testified that they were aware when the property was purchased in 1980 that the Irvington Road alignment might never be opened for public use.

There was a conflict in the testimony as to whether there was access from Mission Road, a major north-south road in the area, to the northwest portion of parcel 6G by means of a road in an existing mobile home subdivision located along the northern boundary of parcel 6G. The county's expert witnesses testified that the road was opened to the public for public use but the landowner testified that the owner of the mobile home subdivision said the road was private and could not be used by the owners of parcel 6G.

The public purpose for which defendants' property was condemned was the construction of a major drainage channel to divert flood waters of the west branch of the Santa Cruz River and the realignment of Valley Road. The drainage channel cuts across the southeast corner of parcel 6G and proceeds through parcel 8A. The total amount of land taken by the county consists of 1.53 acres. After the construction of the project, Valley Road will be realigned so that it travels along the northern border of the west branch channel as it goes by parcel 6G, giving access from parcel 6G to Valley Road. Valley Road then will tie into a relocated Irvington Road southwest of the subject property. The portion of Valley Road to which parcel 6G will have access will not be open for public travel until the development in the area warrants it.

It was the testimony of the landowners' own engineering witness that the access to the subject property after the completion of the construction will be as good as or better than it was before.

The landowners' testimony on damages came from the president of the corporation, Joan Choi, and from a hydrologist, James H. Nelson. Although the landowner had hired an appraiser to determine its damages, the appraiser did not testify at trial. Instead, Mrs. Choi testified that the before value of the property was "substantially more" than the $490,000 Palos Companies paid for it. There was no evidence of the value of the property in the "after" situation, Choi being of the opinion that the property in the after situation was "landlocked". The damage testimony on severance damages came from Nelson who testified that it would cost approximately $114,000 to put a bridge across the west bank channel in order to secure access to the Irvington alignment. There was also evidence of other cost-to-cure damages.

The county put on expert appraisal evidence of the value of the property before and after the taking. Its expert testified that there were no severance damages and the value of the part taken was $14,546.40.

The jury returned a verdict in favor of the landowner awarding it $14,546.40 for the 1.53 acres taken plus $73,000 severance damages.

The county contends the trial court erred in denying plaintiffs' motion for a directed verdict and in refusing to instruct the jury that there were no severance damages and that it should return a verdict in the amount testified to by Mr. Klafter, $14,546.40. We agree.

Relying on *Pima County v. DeConcini*, 79 Ariz. 154, 285 P.2d 609 (1955) and *State ex rel. Herman v. Southern Pacific Company*, 8 Ariz.App. 238, 445 P.2d 186 (1968), it is the landowners' contention that their evidence concerning the construction of a bridge across the drainage channel is a competent method of proving its severance damages. We do not agree. Severance damages are determined by the difference between the fair market value of the remaining property before and after the taking. *Pima County v. Bilby*, 87 Ariz. 366, 351 P.2d 647 (1960); *Pima County v. DeConcini*, supra; *American Savings Life Insurance Company v. State*, 13 Ariz.App. 336, 476 P.2d 680 (1970). While evidence of the cost to restore the property to a condition before the taking may be admissible on the issue of damages, it is not a separate measure of damages. In the case of *Sacramento and San Joaquin Drainage District v. Goehring*, 91 Cal.Rptr. 375, 13 Cal.App.3d 58 (1970), the property owners had introduced into evidence the estimated additional cost of a pumping and draining facility in the "after" condition of the property as contrasted with the "before" condition. In holding that this evidence had no independent probative value the court stated:

"The items noted above are classified as 'cost to cure' items and are compensable. (5 Nichols on Eminent Domain (3d ed.), § 23.2.) Nevertheless, the measure of damages is the decrease in market value of the property. (*People ex rel. Dept. of Public Works v. Hayward Bldg. Materials Co.*, supra [1963], 213 Cal. App.2d [457] at p. 465, 28 Cal.Rptr. 782;

*Dunbar v. Humboldt Bay Mun. Wat. Dist.* (1967) 254 Cal.App.2d 480, 489, 62 Cal.Rptr. 358; 1 Orgel on Valuation Under Eminent Domain, § 46, p. 222.) While cost of replacement or restoration of improvements ('cost to cure') may be relevant evidence on the issue of damages (*People ex rel. Dept. of Public Works, v. Hayward Bldg. Materials Co.,* supra 213 Cal.App.2d at p. 465, 28 Cal. Rptr. 782), it is not a measure of damages to be separately assessed without reference to the loss in fair market value of the property taken or damaged. (*Id.* at pp. 465–467, 28 Cal.Rptr. 782; *Dunbar v. Humboldt Bay Mun. Wat. Dist.,* supra, 254 Cal.App.2d at p. 489, 62 Cal. Rptr. 358; *Steiger v. City of San Diego* (1958) 163 Cal.App.2d 110, 117–118, 329 P.2d 94.) The rule is succinctly set forth in the *Hayward* case (213 Cal.App.2d at p. 469, 28 Cal.Rptr. at p. 789): 'The rule of severance damages is clear; it is the net loss in the market value of the remainder. Costs of reconstruction constitute merely evidence bearing on such loss.' " 91 Cal.Rptr. at 379.[1]

The cases cited by the landowners in support of their independent use of the cost to cure approach are not on point. In *State v. Southern Pacific Company,* supra, the state fenced a portion of highway which ran along the railroads. Because there is no market for railroad right-of-way, the railroad was unable to offer evidence of decrease in value to its land as a result of the fencing. The railroad claimed loss of access and evidence of the damages was in the form of economic hardship to the railroad in its increased operating cost. The court ruled that where there is no evidence of loss of market value, there still may be compensable economic loss. This theory is based upon art. 2, § 17 of the Arizona Constitution and the Fifth Amendment to the United States Constitution which states that a property owner whose property is taken must be compensated. The court concluded that economic loss is an allowable substitute for market value, *if evidence of market value is unavailable:*

"If the character of the property *absolutely* precludes any ascertainment of the market value, then we hold that consideration may be given to the value peculiar to the owner, the *cost of cure,* replacement cost minus depreciation, capitalized cost of inconvenience, or any other manner which would be a fair method of compensating a landowner for the damages to his property from eminent domain." (Emphasis added) 8 Ariz.App. at 241, 445 P.2d 186.

In the case of *Pima County v. DeConcini,* supra, the county widened the highway and by construction of a drainage ditch destroyed access to the remainder of the land. The landowners' expert witnesses testified that with the drainage ditch destroying the access, the remaining land was not adaptable to any commercial use and had little value if any. The court held that evidence as to the cost of restoring access by the construction of bridges was admissible stating:

"The rule also is that in arriving at the market value of land which has been damaged by the exercise of the right of eminent domain the court has a right to admit evidence of possible expenditures which, if expended, would diminish the damages. While the measure of severance damages is the difference between the market value before and after the taking, evidence of expenditures which, if made, would cause a change in market value are admissible and should be considered by the court in arriving at such value. The limitation of the rule is that the expenditures must be in such an amount as will not exceed the difference between the market value before and after taking which would have existed without the expenditure. In other words, this class of evidence cannot operate to increase the damages above what they would be without the expenditure. [citations omitted]" 79 Ariz. at 157–158, 285 P.2d 609.

1. See also *State of Louisiana, Through the Department of Highways v. Alexandria Volkswagen, Inc.,* 348 So.2d 176 (La.App.1977) and

see also *Tunison v. Multnomah County,* 251 Or. 602, 445 P.2d 498 (1968).

As can be seen, the *DeConcini* case does not stand for the proposition that the cost to cure approach is an independently probative method of proving severance damages.

Here, there was no evidence that this property in the "after" situation was so unusual that it had no market. Choi's opinion that the property was landlocked is without any support in the record. The property had the same type of access in the before situation as it did in the after situation. The condemnee has the burden of proving severance damages. *American Savings and Life Insurance Company v. State ex rel. Herman*, supra. The landowner failed to offer any evidence of the value of the property in the "after" situation. The issue of severance damages should never have been submitted to the jury.

The award of severance damages is vacated and set aside, the judgment is affirmed in all other respects except those portions of the judgment which are affected by the vacating of the award of severance damages.

BIRDSALL, C.J., and HATHAWAY, J., concur.