541 P.2d 590

**CITY OF TUCSON, a Municipal Corporation, Appellant,**

v.

**Gilbert Garcia GASTELUM and Delia Sanchez Gastelum, husband and wife, Appellees.**

**No. 2 CA–CIV 1902.**

Court of Appeals of Arizona, Division 2.

Oct. 28, 1975.

Rehearing Denied Dec. 5, 1975.

Review Denied Jan. 6, 1976.

**128**

James D. Webb, Tucson City Atty. by William E. Hildebrandt, Asst. City Atty., Tucson, for appellant.

Robert C. Stubbs & Associates, P. C. by Robert C. Stubbs, Tucson, for appellees.

## OPINION

HOWARD, Chief Judge.

This is a condemnation action in which the jury returned a verdict awarding appellees damages in the amount of $5,763 for the part taken and severance damages in the sum of $50,789.50. In subsequent proceedings, the trial court denied appellant's motion for new trial on the issue of sev-erance damages only, and ordered a remittitur in the amount of $3,351.57 which was accepted by appellees.

A complaint and summons was issued on June 12, 1973 for the taking for drainage way purposes of a strip of land, running east and west, 60 feet wide and 308 feet long. Appellees' land borders along the Santa Cruz Riverbed. In the "before" situation, appellees' land consisted of 303,134 square feet on which were improvements consisting of a residence and a well. The area taken consists of 19,210 square feet. In the "after" situation the north parcel on which the residence was located, consists of 174,806 square feet and the south parcel, on which the well was located, contains 109,118 square feet.

The parties stipulated to immediate possession upon appellant's deposit of the sum of $10,100 and that appellees could withdraw that sum. The order for immediate possession was entered by the court on July 10, 1973. On July 25, 1973, the city posted the $10,100 and on August 7, 1973, appellees withdrew the entire amount.

The drainage way was constructed according to plans which provided for it to be an open dirt-banked ditch. As a result of the construction of the drainage way, the south portion of appellees' property is landlocked.

Before trial, the court denied appellant's motion to forbid appellees from introducing evidence concerning future damages which might result from the construction of the drainage way.

Appellant's appraisal witness testified that the value of the entire property, exclusive of the improvements, in the "before" situation was the sum of $59,325, and that the value of the part taken was $3,375. As for severance damages, he believed that as a result of the taking, the south parcel suffered a diminution in value of $3,679; in addition, the access problem could be solved by building a bridge across the ditch. He estimated the cost of the bridge to be $12,-663, for total severance damages of $16,-

342. He did not attribute any value to the well on the property.

Appellees' appraisal witness valued the land in the "before" situation at $.25 per square foot or $75,783.50, and the well at $3,500.[1] In the "after" situation, he valued the land north of the ditch at the same value per square foot as in the "before" situation. He testified that the part taken was valued at $4,802.50. His estimation of total severance damages was $35,476.13, which included damages of $1,750 to the well; cost of fencing the ditch, $710; bank protection, $12,000 and diminution in value of the south land of $21,016.13.

The landowners testified that their land was worth $.35 per square foot and their total damages were $54,161.43, which included severance damages of $47,437.93.

## SEVERANCE DAMAGES

The remittitur reduced the severance damages to the exact amount Mr. Gastelum claimed in his testimony. The city first contends that the jury verdict exceeded the highest estimate of damages and that the trial court did not grant a sufficient remittitur. Furthermore, the city contends that the result of the trial court's remittitur is to allow an inconsistent verdict.

To support its contention on severance damages, appellant has, in its reply brief, combined various sums testified to by the different witnesses and arrived at a figure within $.37 of the amount actually awarded by the jury as severance damages. Since this combination includes elements which are inherently inconsistent, appellant urges a justification for reversal. We do not agree. There were no special interrogatories submitted to the jury. We do not know how it arrived at its estimate of severance damages. Appellant's calculations are sheer speculation. Where the amount of damages or the value of property is concerned, and where witnesses pick varying sums as a proper estimate of damages or the value of the property, the trial court and the jury are not bound to fix the verdict or judgment at the exact sum testified to by any one of the witnesses, especially when the conclusions are based upon many factors. They may instead take part of the necessary factors from the testimony of one witness and part from that of another, and reach a result anywhere between the highest and lowest estimate which may be arrived at by using the various factors appearing in the testimony. Any combination which is reasonable will be sustained by the trial court. *State v. Lopez*, 8 Ariz. App. 61, 442 P.2d 884 (1968).

Although appellees' appraisal witness did not believe it was economical to build a bridge across the ditch, he testified on cross examination that if a bridge were built, the value of the remainder of the land south of the ditch in the "after" situation would be $.14 a square foot or $15,276.52. The jury, as evidenced by the amount of its award for the part taken, valued such land in the "before" situation at $.30 a square foot. The reduction in value in the "after" situation using the jury's "before" value and a $.14 a square foot in the "after" situation would therefore be the sum of $17,458.88. Appellees' appraiser testified that a bridge would cost $13,600 to construct and that the cost of fencing the ditch would be $710. An engineer testified on behalf of the appellees that it would cost $19,320 to gunite the ditch in order to prevent erosion of appellees' land. This witness also testified that the job could be done for $12,906 if asphalt were used for part of the ditch. However, he also testified that the asphalt, being organic in nature, would eventually deteriorate and require maintenance. These foregoing amounts add up to severance damages in the sum of $51,088.88, an amount greater than that arrived at by the jury.

We conclude that if there were any error in the amount of the remittitur, it was

---

1. We do not include his value for the residence since he testified that it suffered no damages as a result of the taking.

in favor of the appellant since the trial court would have been justified in not granting a reduction.

## EROSION DAMAGES FROM DRAINAGEWAY

Appellees' witnesses testified that the ditch would and did cause erosion to appellees' land next to the ditch. They were not able to testify as to how many cubic yards of appellees' land would be eroded away due to the construction of the ditch. However, they did consider such erosion in arriving at severance damages and concluded that, in order to prevent erosion, the ditch would have to be lined in some manner. Appellant's appraisal witness did not consider the ditch at all as far as erosion was concerned and testified that he was instructed by the city engineer not to go out on the land and inspect the ditch prior to trial.

Appellees' appraisal witness testified that any prudent buyer would take into consideration the fact that erosion would occur and also the cost of preventing the erosion when arriving at an amount he would be willing to pay for the property.

The landowners' testimony was that the erosion was caused by three factors:

1. The dirt ditch.
2. The soil composition of appellees' land.
3. Rain.

When these factors combined, they cause the ditch to erode and eat into appellees' land. Appellees' appraiser saw no evidence of erosion when he first inspected the ditch. A later inspection revealed this erosion. There was no testimony as to whether it had rained, or the intensity of any rains prior to the time the appraiser first inspected the ditch. Obviously, by the time of his second inspection, there had been sufficient rain to cause erosion.

It is the city's contention that since the erosion did not occur until after the date of valuation (the date of the summons) and

after completion of the ditch, such erosion damages were not compensable in this condemnation action, but should be asserted in a separate suit for negligence. Furthermore, the city contends that evidence of erosion should not have been admitted since it cannot be liable in a condemnation action for negligent maintenance of the ditch; also, that there was no evidence that such negligent operation of the ditch would continue in the future. These contentions are without merit.

It must first be realized that we are dealing with a situation in which the improvements have already been constructed by the condemning authority. The rule in such cases has been aptly set forth in the case of *State v. Williams*, 12 Wash.2d 1, 120 P. 2d 496, 498 (1941):

> "When the state or other public body prosecutes such a proceeding to appropriate private property for the construction at some future time of a public improvement, naturally, it is assumed that the work will be done in a proper manner without negligence; and the property owner is entitled only to such compensation and damages as can reasonably be foreseen as the result of the improvement constructed in that manner.
>
> But where, as in the instant case, the public work for which the private property is to be appropriated has been done before the amount of damages has been judicially assessed, then the owner is not limited to damages which could have been foreseen, but may recover all damages which come within the provision of Art. I, § 16, of the constitution, that 'No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid in to court for the owner.' [citations omitted]. In the case last cited, this court said: 'Where as in the case at bar, damages are assessed after the works have been constructed, we think the proper measure of gross damages is the value of the part taken together with all dam-

ages to the remainder whether traceable to proper or negligent construction . . .'"

The foregoing is in accord with *State v. Dart*, 23 Ariz. 145, 202 P. 237 (1921), overruled on other grounds in *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P. 2d 107 (1963):

"The authorities are unanimous to the effect that when the damages are assessed before the taking, nothing can be included for wrongful or negligent acts upon the theory that they may occur, but the damages are limited to such as necessarily arise from a lawful taking and a proper construction and operation of the improvement. [citation omitted]

The reason for the rule is that damages cannot be allowed for an injury which the law presumes will not be inflicted. No compensation based on such a presumption of negligence or wrongdoing could ever be tolerated by the law [citation omitted]; and 'though consequential injuries may be anticipated and compensated, those originating from carelessness or neglect, as they cannot be foreseen, neither can the damages resulting from them be in advance measured or provided for.' [citation omitted]

But where the damages are assessed after the works are actually constructed, a different rule applies: 'If the works are built before the assessment of damages is had, the damages should be assessed on the basis of the works as constructed, even if improperly constructed, for the condemnor should not be allowed to assert its own wrong.' [citation omitted]" 23 Ariz. at 150, 151, 202 P. at 239.

The construction of the ditch in this case had already been completed and its effect on appellees' land already demonstrated. Appellant's characterization of the situation as one of negligent maintenance or negligent operation is inapposite. The landowners' basis for damages is not that of negligent maintenance or operation, but of improper construction, and such damages clearly fall within the rule set forth in *State v. Dart*, supra.

## INTEREST

The trial court allowed interest on the sum of $10,100 (the amount deposited pursuant to the order of immediate possession) from the date of the order, July 10, 1973, to July 25, 1973 (the date the city deposited the cash with the court). Pursuant to A.R.S. Sec. 12-1123(B), no further interest was allowed by the court on the foregoing sum.

A.R.S. Sec. 12-1123(B) provides:

"If an order is made letting the plaintiff into possession prior to final judgment, the compensation and damages awarded shall draw legal interest from the date of the order except that where the defendant is allowed, pursuant to § 12-1116, subsection H, to withdraw the money deposited by plaintiff, such defendant shall not be entitled to any legal interest upon the money which he is allowed to withdraw regardless of the date of the order letting plaintiff into possession."

It is appellees' position that since they were denied the use of their property by virtue of the order for immediate possession, the foregoing statute is unconstitutional if it operates to deny interest from the date of the order to the time when the money actually becomes available for withdrawal. We do not agree.

Under the provisions of A.R.S. Sec. 12-1116, an order for immediate possession is authorized upon the posting of sufficient money or bonds. We see no constitutional requirement that such money be available for the landowner's withdrawal prior to final judgment. There is no constitutional infirmity in requiring, as a quid pro quo, that the landowner forego interest when he withdraws deposits of money made pursuant to a stipulation and pursuant to the foregoing statute.

**132**

Appellees have referred us to the recent Alaska case of *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242 (1974), where the court held there was a constitutional requirement that interest be allowed from the date of the summons. That case, however, is inapposite since the Alaskan court specifically limited its rule to cases involving the appropriation of vacant and unimproved land and involving a total taking.[2]

The judgment is modified by disallowing all interest on the sum of $10,100, and the judgment is affirmed as modified.

KRUCKER and HATHAWAY, JJ., concur.

**2.** If we were to follow the Alaska rule in this case, interest would only accrue on the sum of $5,763, the value of the part taken.