**AMERICAN SAMOA GOVERNMENT,**
**Plaintiff/Counterdefendant,**

**v.**

**.145 ACRES, MORE OR LESS, OF LAND AND RIGHT-OF-WAY TO THE LAND IN SQUARE 28, UNIT D, IN THE VILLAGE OF TAFUNA, COUNTY OF TUALAUTA, WESTERN DISTRICT, ISLAND OF TUTUILA, AMERICAN SAMOA, NEIL ANNANDALE, and DOES I-X, Defendants/Counterclaimants/Cross-Claimants,**

**v.**

**AMERICAN SAMOA POWER AUTHORITY, and FLETCHER CONSTRUCTION, Cross-Defendants.**

OPINION AND ORDER

Before RICHMOND, Associate Justice, SAGAPOLUTELE, Associate Judge, and TAUANU'U, Temporary Associate Judge.

Counsel: For Plaintiff, Fiti A. Sunia, Attorney General
For Defendant, Charles V. Alailima,
For Cross-Defendants, Roy J.D. Hall, Jr.

In 1995, plaintiff American Samoa Government ("ASG") initiated this action pursuant to A.S.C.A. §§ 43.1001-.1036 to condemn interests in land of defendant Neil Annandale ("Annandale") in Tafuna for installations connected with the public sewage collection system in this area. By this action, ASG sought to acquire a fee simple interest in approximately 0.045 acre along the southern boundary of the land ("Parcel A") and a right-of-way in approximately 0.10 acre across the land ("Parcel B").

ASG declared the value of the interests to be $4,000.00 for Parcel A and $50.00 for Parcel B, and deposited the total sum of $4,050.00 in the Court registry, in accordance with A.S.C.A. §§ 43.1001 and 43.1003. By this making this deposit, ASG immediately acquired title to the interests desired, pursuant to A.S.C.A. § 43.1005. ASG also served Annandale with process and, under A.S.C.A. § 43.1002, gained the right to possess

64

and use those interests.

When Annandale answered the complaint, he rejected the amount of the compensation deposited. He also counterclaimed against ASG and cross-claimed against defendants American Samoa Power Authority ("ASPA") and Fletcher Construction ("Fletcher") for damages based on trespass on Annandale's land, allegedly beginning on or about January 23, 1995, and destroying plants, fences and walls.

In view of Annandale's objections to ASG's estimated values of the condemned interests in the land, determination of the compensation amount was referred to arbitration, pursuant to A.S.C.A. § 43.1010. On August 19, 1996, the arbitrators awarded $5,800.00 for Parcel A and $50.00 for Parcel B. Annandale accepted the award for Parcel A, and on December 15, 1997, the Court's partial judgment and order was entered with respect to this parcel, confirming ASG's title to Parcel A and requiring ASG to pay $5,800.00 to Annandale for this parcel.

Annandale appealed the award for Parcel B. On May 19, 1997, the Appellate Division held that the arbitrators failed to support the award for Parcel B with findings and conclusions, and remanded this award to the same arbitrators for further proceedings and a determination, based on written findings and conclusions, to be submitted to this court. The Attorney General has informed the Court that the arbitration award for the Parcel B was made in December 2000, but the arbitrators have yet to publish their decisions.

Trial on the trespass claims was held on July 10, 2000, and this opinion and order is limited to those claims. The two issues before the Court are (1) whether the actions by ASPA and Fletcher constitute trespass, and if so, (2) whether and what damages ASPA and Fletcher owe to Annandale.

### Discussion

### I. Trespass

 This Court declared its standard for trespass in *Letuli v. Le`i*:

> The tort of trespass to land is the unlawful interference with its possession. W. Prosser and W. Keeton, *The Law of Torts* § 13, at 70 (5th ed. 1984). It may be committed as the result of an act which is intentional, reckless, or negligent, or as the result of ultrahazardous activity. *Gallin v. Poulou*, 295 P.2d 958, 959-62 (Cal. App. 1956). The only intent required is the intent to enter another's land, regardless of the actor's motivation. *Miller v. National broadcasting Co.*, 232 Cal. Rptr. 668, 676-

77 (Cal. App. 1986). Trespass may occur by causing the entry of some other person or thing. *Restatement (Second) of Torts* §158 (a), at 277 (1965).

*Letuli v. Le`i*, 22 A.S.R.2d 77, 82 (Land & Titles Div. 1992).

■ We read the rule applied in *Letuli* to mean that in adjudging whether trespass has occurred in civil cases, the claimant must establish (1) *unlawful interference* with the possession of property, (2) which may be the result of *intentional, reckless, negligent or ultrahazardous activities,* (3) where there existed an attempt to be at the place on the land where the trespass allegedly occurred, and (4) which may consist of the entry of some other person or thing. We find that ASG, ASPA, and Fletcher did trespass upon Annandale's land based on these four criteria.

■ On or about Monday, January 23, 1995, employees of Fletcher, while on contract with ASPA, entered Annandale's land and destroyed a cement wall, a chain-link fence, a mango tree, plants and shrubs, and dug a trench in the ground. At the time, ASPA had not obtained an easement from Annandale for use of his land, nor had Fletcher remedied this oversight by making arrangements to obtain one.

Annandale appropriately and immediately notified ASPA authorities through legal counsel, but none of these parties responded to his appropriate protest against Fletcher's invasion of Annandale's land. Fletcher thus engaged in repeated intentional acts consisting of unpermitted and uninvited infringement upon, injury to, and invasion of Annandale's land.

■ ASG and ASPA are liable with Fletcher for trespass as employers of that independent contractor. As a general rule, the employer of an *independent contractor is not liable for harm resulting from that* contractor's acts or omissions. RESTATEMENT (SECOND) OF TORTS § 409 (1965); *Letuli,* 22 A.S.R.2d at 83. However, if an employer employs an independent contractor to do work which he knows or has reason to know will likely involve a trespass upon the land of another, he is liable for harm resulting to others from such trespass. RESTATEMENT (SECOND) OF TORTS § 427B (1965). Here, ASPA hired Fletcher to institute an underground sewer line, which work inherently implies effacement and destruction of Annandale's land. ASG and ASPA had reason to know that Fletcher's work would involve trespass; their duty was to secure authorization for the intended work activity, so as to render the encroachment and conversion of Annandale's property lawful. The contract between ASPA and Fletcher, with respect to the necessity and distribution of responsibility for obtaining easements, confirms ASPA's awareness of the potential for trespass and consequent liability involved in contracting for sewer line placement. Because they did not obtain

valid authorization, ASG and ASPA are liable for harm resulting from their independent contractor's physical trespass.

ASG and ASPA claim that they acted with Annandale's consent to work on the property, and argue that they are thus not liable for co-opting it. However, they have failed to convince the court that Annandale consented to their doing work on the property. In fact, Annandale's subsequent complaints to ASPA indicate that he not only lacked knowledge of the extent of the work, but also that he did not give ASPA consent to perform it. In any case, consent to enter and work on property does not justify total government taking.

This case involves forced preemption of private property by a government entity. At the time of the trespass, on January 23, 1995, ASPA rules specified that no buildings, structures, or residences were to be built over public sewers. In invading and clearing Annandale's land without an easement or other proper authorization, making the land unfit for any other use, ASPA embarked on an unauthorized taking. Such unilateral takings are regulated by definitively proscribed legal standards for condemnation. A.S.C.A. §§ 43.1001-.1036 detail procedures such as filing a comprehensive complaint with the High Court and/or Attorney General, service of notice, and payment of compensation for private property taken. These procedures protect the property and personages of individual citizens against cooption by arbitrary authority. Violation of these procedures by a government entity is unlawful and unjust.

ASG and ASPA failed their duty to comply with the procedures set forth in A.S.C.A. §§ 43.1001-.1036. ASPA did not request that ASG condemn Annandale's land until March 6, 1995, about six weeks after Fletcher entered the land. ASG did not file a complaint to condemn the land until March 14, 1995, almost two months after the entry. We thus find that Fletcher, ASPA and ASG engaged in intentional and unlawful interference with Annandale's land between January 23, 1995 and March 14, 1995. Clearly, their joint activity constitutes trespass.

## II. Basis for Relief

We now turn to the issue of damages. Annandale's original complaint, filed on March 14, 1995, states a slightly different basis for relief than does his trial memorandum, submitted on July 10, 2000. Annandale's counterclaim and cross-claim seek punitive and compensatory damages for damage to his land. His trial brief, however, seeks compensatory damages for indemnity or restitution for "loss of plantings," emotional distress, and attorney's fees and costs, and not merely for damages to property. A threshold issue is thus whether the court may recognize the additional bases for relief requested in the trial brief that were not

mentioned in the counterclaim or cross-claim. In legal terms, the issue is whether the added terms of Annandale's trial brief constitute a valid amendment of his claims.

A. Amending Pleadings

T.C.R.C.P. 15(a) delineates the parameters for amending or supplementing pleadings. It states:

> A party may amend his pleadings as a matter of course at any time before a responsive pleading is served. Otherwise a party may amend his pleading only by leave of court or by written consent·of the adverse party; and leave shall be freely given when justice so requires.

*See also* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1486 (2d ed. 1990). This Court construes pleadings and their amendments liberally, in order to do "substantial justice," even if the pleadings occasionally do not strictly comply with formal requirements. T.C.R.C.P. 8(f); *see, e.g., Dev. Bank v. Ilalio*, 5 A.S.R.2d 110, 115-16 (Trial Div. 1987). We give wide latitude to parties to amend material pleadings. *See, e.g., Thomsen v. Bank of Hawaii*, 28 A.S.R.2d 86, 87 (Trial Div. 1995). There are, however, certain limitations to our vast discretion to freely give leave to amend pleadings. In *McKenzie v. Le'iato*, 27 A.S.R.2d 53, 55 (Trial Div. 1994), we applied the U.S. Supreme Court ruling in *Foman v. Davis*, 371 U.S. 178, 183 (1962), which requires that a trial court give justifying reasons for denying an opportunity to amend a complaint. *Foman* suggested several viable factors for a trial court's denial of a motion for leave to amend:

> In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.,--the leave sought should, as the rules require, be 'freely given.'

*Foman*, 371 U.S. at 183. Annandale has not officially applied for leave to amend or to supplement his complaint. Instead, he has added extraneous language to his trial memorandum, and left it to the discretion of this court to determine whether "justice so requires" our recognizing the implicit amendment.

The record shows that Annandale had more than ample time to amend

his counterclaim and cross-claim. The condemnation complaint was filed on March 14, 1995, and a partial judgment was entered on December 10, 1997, as to Parcel A. More than *two years* then passed, during which no pleading or action on the case was taken by either party. On December 22, 1999, an order by this court was entered declaring that the case was not diligently prosecuted, and that the case would be dismissed with prejudice within 30 days unless good cause was shown otherwise. Exactly 30 days later, the motion for hearing to set trial date was filed, and the trial was held on July 10, 2000. Thus, Annandale had a wide berth of time—more than five years—during which he might have moved to amend or supplement his counterclaim and cross-claim, but did not. Such undue delay precludes us from giving Annandale leave to amend his pleadings.

Moreover, allowing such a last-minute amendment would be prejudicial to the opposing parties. One novel basis for relief slipped into a trial memorandum in the form of seemingly innocuous, extraneous language. Because of the prejudice that allowing such unstated 'amendments' would cause, we follow our ruling in *McKenzie* and refuse to extend our obligation to liberally construe pleadings to avoid injustice, towards refashioning a party's theory of relief. *McKenzie*, 27 A.S.R.2d at 67.

■ A minimum requirement for a party's amendment of pleadings is that it submit a motion for leave to amend under T.C.R.C.P. 15 (a). The procedural requirement of filing a motion for leave to amend enables the court to consider the justice of the filing. It places the opposing party on timely and proper notice of the new claim for relief, and more importantly, enables that party to contest the claim in open court. The extraneous language included in Annandale's final memorandum constitutes a deviation from High Court Rules and does not comport with the court's standards of due process. We will not accept Annandale's implicit "amendment" of his counterclaim and cross-claim because of *undue delay, and because doing so would be unduly burdensome and* prejudicial to ASG, ASPA, and Fletcher.

Therefore, based on our court rules and the relevant case law, we will not recognize the new claim for compensatory relief stated in Annandale's trial memorandum--specifically, the claim for emotional loss. Referring back to Annandale's original pleadings, and considering that the condemnation and arbitration have taken since place to account for lost value of the land itself, we consider Annandale's claims to be as follows: against ASPA and Fletcher for willful trespass and destruction of property.

## B. Compensatory Damages

■ Annandale's complaint seeks compensatory and punitive damages, excluding just compensation for the depreciated value of the land, which is accounted for in the condemnation proceedings. Compensatory damages are designed to compensate for actual injury or loss, and punitive damages are awarded as punishment or deterrence for particularly egregious conduct. *Nappe v. Anschelewitz*, 477 A.2d 1224, 1228 (N.J. 1984). The issue is what compensation may be justly afforded to Annandale for the destruction of the vegetation, fences and walls on his property caused by the trespass.

■ We have previously addressed the issue of compensation for victims of past trespass for damages to land in *Letuli* in which we set our standard for compensatory damages. *Letuli*, 22 A.S.R.2d at 85. Compensatory damages are to be measured by (1) diminution in value, i.e., difference between market value of land before and after the harm, or cost of restoration when appropriate, (2) loss of use of the land, and (3) discomfort and annoyance to the occupant of the land. *Id.*; see *also* RESTATEMENT (SECOND) OF TORTS § 929(1) (1965). If a severable thing attached to the land is damaged, recovery of the loss in market value to the attachment is an optional approach. RESTATEMENT (SECOND) OF TORTS § 929(2) (1965). In any case, proof of pecuniary loss is required. "In the absence of such proof, which can occur when substantial actual damages are not susceptible to precise proof, the damage entitlement is limited to nominal damages in a trivial amount." *Letuli*, 22 A.S.R.2d at 85; *see also* RESTATEMENT (SECOND) OF TORTS § 907 (1965).

■ In the course of their trespass, ASG, ASPA, and Fletcher destroyed plants, fences and walls on Annandale's land. However, no evidence was presented regarding the market value of the damaged vegetation, fences, and walls. In the absence of such evidence, we must rule according to our holding in *Letuli,* where no evidence was presented as to the market value or other readily ascertainable pecuniary value, and where we could not, therefore, award compensatory damages.

■ As discussed in great detail in *Dixon v. City of Phoenix*, case authority points to a restoration cost exception to the market value measure of damages where landscaping and vegetation have intrinsic value to the landowner. 845 P.2d 1107, 1116 (Ariz. Ct. App. 1982). Such intrinsic value is assumed, and does not require evidentiary support, where the property damaged is a homesite or recreational lot. *See* RESTATEMENT (SECOND) OF TORTS § 929 cmt. b (1965); *Thatcher v. Lane Construction Co.*, 254 N.E.2d 703, 706 (Ohio Ct. App. 1970); *Rector, Etc. v. C.S. McCrossan*, 235 N.W.2d 609, 610 (Minn. 1975);

*Denoyer v. Lamb*, 490 N.E.2d 615, 618 (Ohio Ct. App.1984).

> [I]n appropriate cases, a landowner whose vegetation has been destroyed by a trespass may receive damages based on restoration costs. This is so even when the amount may exceed the diminution in market value of the real property on which the vegetation grew.

*Dixon*, 845 P.2d at 1117. *Dixon* also emphasized that only *reasonable* costs of replacing destroyed vegetation may be recovered. *Id.*

 We do not find sufficient indication, either by evidence or reason, of any intrinsic value of the lost landscaping and vegetation. The property in question was a rental property rather than a homesite or recreational lot for which intrinsic meaning has been found in order to apply the restoration cost standard for compensatory damages. *See Thatcher*, 254 N.E.2d at 708; *Rector*, 235 N.W.2d at 610; *Denoyer*, 490 N.E.2d at 618. The "intrinsic meaning" of the vegetation and attachments to Annandale's land must be held to be, therefore, negligible.

There being no evidence as to (1) the intrinsic value of the property or else the pecuniary worth of its diminution in value due to trespass, (2) no issue as to the loss of the land itself (that being decided by arbitration), and (3) no "satisfactory proof of consequential illness or significant bodily or emotional injury" to merit compensation for emotional distress, our award of compensatory damages for trespass upon Annadale's land is limited to the nominal amount of $1.00. *See Letuli*, 22 A.S.R.2d at 86,

C. Punitive Damages

 Punitive or exemplary damages may be awarded whether or not compensatory damages are awarded, in order to punish a wrongdoer as well as to deter other from similar future misconduct which resulted in injury, loss or detriment to another. *Letuli*, 22 A.S.R.2d at 86; *Nappe*, 477 A.2d at 1232; RESTATEMENT (SECOND) OF TORTS § 908 and cmts. b & c (1965). The punitive award is based on whether the trespasser's conduct was wantonly reckless or malicious. The offender must have engaged in "intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard of the rights of another." *Nappe*, 477 A.2d at 1230.

 The actions of ASG, ASPA, and Fletcher in trespassing upon Annandale's land do not appear to have occurred with any evil intent. However, their actions did occur with reckless disregard for Annandale's rights as a private property owner, and in violation of the contract between ASPA and Fletcher and ASPA's rules regarding obtaining

easements or condemnation before commencing work. The trespass continued despite repeated written requests to cease. In *Letuli*, we awarded the plaintiff $1,500.00 in punitive damages where the defendant bulldozed natural growth trees on a 12-foot right of way in malicious retribution for the plaintiff's refusal to clear the property for the defendant's ocean view. The factors we considered in that case were "the character of the defendant's act, the nature of the plaintiff's harm, and defendant's responsible station in life." *Letuli*, 22 A.S.R.2d at 86.

In this case, the property in question involves more or less 0.145 acres, the destruction of erected fences and shrubs, and sloppiness in procuring the requisite consent, easement or condemnation action before commencing sewer line work on private property. ASG, ASPA, and Fletcher trespassed upon the property illegally for more than two months despite Annadale's immediate and repeated notice and protest. For punishment of such wanton disregard of the rights of private property owners, and for deterrence against ASG, ASPA, and Fletcher whose frequent infrastructure work and abundant resources necessitate attention to detail and care, we award Annadale $3,000.00 in punitive damages.

Furthermore, A.S.C.A. § 43.5051 requires that damages be trebled in trespass cases where the damage is to "timber, young tree growth, or products of tree growth . . . , or cultivated grounds" without lawful authority or permission. We thus award to Annandale a total of $9,003.00 in compensatory and punitive damages.

D. Attorney's Fees and Costs

Attorney's fees are not ordinarily recoverable by a prevailing party, but may be awarded when an opposing party has acted in bad faith, wantonly, oppressively or when a statute dictates. *See Fiaui v. Faumuina*, 27 A.S.R.2d 36, 42 (Trial Div. 1994); *F.D. Rich Co.v. Indus. Lumber Co.*, 417 U.S. 116, 129 (1973). Annandale is deserving of attorney's fees in this case, where public agencies and their agents acted oppressively and in wanton disregard of the valid property claims of an individual citizen. Annandale is also entitled to costs of suit. T.C.R.C.P. 54(d).

## Order

1. There being no proof of compensatory damages, ASG, ASPA, and Fletcher are jointly and severally liable for $1.00 in nominal damages to Annandale for willful trespass to his land.

2. Due to their reckless indifference to Annandale's right to private property protected by the laws of American Samoa, as well as the contract between ASPA and Fletcher and ASPA's rules, ASG, ASPA,

and Fletcher are jointly and severally liable for $3,000.00 in punitive damages.

3. Pursuant to A.S.C.A. § 43.5051, the total amount of damages jointly and severally owed by ASG, ASPA, and Fletcher to Annandale are tripled to the total amount of $9,0003.00.

4. ASG, ASPA and Fletcher are also jointly and severally liable to pay to Annandale attorney's fees in the amount of $1,500.00 plus his actual costs of suit.

It is so ordered.